UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PRESS COALITION'S MOTION FOR ACCESS TO VIDEO EXHIBITS AND TO SET ASIDE STANDING ORDER NO. 21-28 | Miscellaneous Action No. 21-87 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a petition submitted on behalf of fifteen media organizations ("the Press Coalition" or "petitioners") seeking two-pronged relief: first, an order releasing video exhibits submitted to the Court in *United States v. Owens*, Case No. 21-cr-286 (BAH); and, second, an order vacating Standing Order No. 21-28 (BAH) (May 14, 2021), which provides a process for releasing video exhibits in the criminal cases stemming from the January 6, 2021 attack on the United States Capitol (the "Capitol Cases"). Pet'rs' Mot. for Access to Video Exhibits and to Set Aside Standing Order No. 21-28 ("Pet'rs' Mot."), ECF No. 1. The video exhibits in *Owens* have already been ordered released, without restriction, after consultation with and consent of the parties in that criminal case, Min. Order (Jun. 23, 2021), *United States v. Owens*, Case No. 21-cr-286 (BAH), and thus this aspect of the requested relief in the instant petition is denied as moot.

As to the second prong of the relief requested, petitioners previously, successfully, requested issuance by the undersigned, in her capacity as Chief Judge, of a standing order to govern the process of release of video exhibits in *all* Capitol cases, Mot. to Access Video Exhibits in the Capitol Riot Cases, *In re Press and Pub. Access to Video Exhibits in the Capitol Riot Cases*, Case No. 21-mc-46 (BAH), ECF No. 1, but now have reversed course and want Standing Order No. 21-28 ("Standing Order"), "set aside," Pet'rs' Mot. at 1. Petitioners

1

eloquently note that "[t]he public's interest in the administration of justice has never been greater than it is with the criminal cases arising out of this dangerous threat to the peaceful transfer of authority," and that "[t]o reinforce the public's confidence in the stability of our government, the courts must ensure maximum public transparency for the unprecedented prosecutions in the Capitol Cases." Pet'rs' Mem. of Points and Auths. Supp. Mot. for Access to Video Exhibits and to Set Aside Standing Order No. 21-28 ("Pet'rs' Mem.") at 1, ECF No. 1-1. This Court agrees with these sentiments and, further, that the judicial processing of the Capitol Cases may, in some respects, as petitioners suggest, "offer the public an objective inquiry into the events of January 6." *Id*. at 2.

Petitioners explain their about-face from their original request for a standing order by arguing that Standing Order No. 21-28 "unduly restricts public access to the Video Exhibits," Pet'rs' Mot. at 1, in violation of the First Amendment and the common law right of access, Pet'rs' Mem. at 11–12. This argument is predicated on both a misreading of the Standing Order and misconception of the authority of the Chief Judge to resolve *ex ante* substantive issues arising in criminal cases assigned to other judges on this Court. Rather than restricting access, Standing Order No. 21-28: (1) directs the United States Attorney's Office for the District of Columbia ("USAO") to set up a system for releasing video exhibits in Capitol Cases; (2) establishes a procedure, grounded in the Local Criminal Rules of this Court, for public release of such video exhibits; and (3) respects the prerogative of each presiding judge to make any requisite findings specific to individual cases that may be pertinent to the conditions, if any, of public release of video exhibits. Petitioners' motion to set aside the Standing Order is therefore denied.

I.      **BACKGROUND**

The background relevant to the instant petition is described below, starting with a description of the video evidence at issue and petitioners' previous successful request for a standing order, before explaining the Standing Order and petitioners' current objections to it.

**A.  The Capitol Case Video Exhibits and Petitioners' Request for a Standing Order**

Videotape clips showing the conduct on January 6, 2021, of defendants charged in the Capitol Cases, and others, have been submitted to date—principally by the government and occasionally by defendants—to the Court for use in pretrial proceedings, usually detention hearings.  The video exhibits have originated from multiple sources, including publicly available YouTube videos, social media postings, seized electronic devices of defendants and their associates, body-worn camera footage of Metropolitan Police Officers, and security camera footage from the U.S. Capitol Building and grounds.  Still photographs from the video exhibits are frequently presented in parties' briefing filed with the Court and, unless ordered to be placed under seal, these filings are generally available for public and media access on the Federal Judiciary's Case Management/Electronic Case Filing ("CM/ECF") system.  CM/ECF cannot accommodate exhibits in a videotape format, however.  For exhibits, such as videos, that cannot be filed on CM/ECF, the Local Rules of this Court require the party submitting the exhibit for consideration by the Court to file a Notice of Filing, which alerts all parties to the action and the public about the exhibit's submission, and to maintain custody of the exhibit.  Specially, Local Criminal Rule 49(e)(1) provides, in pertinent part, that:

> Any document, exhibit, or attachment, including sealed material, that . . . is not in a format that readily permits electronic filing, such as a map, chart, or DVD, . . . is to be maintained in the possession of the attorney or *pro se* party responsible for the filing.  Such a filing shall be made available for a party or the Court and must be identified in a Notice of Filing filed with the Court.  A document or item filed pursuant to this subsection shall be served, if it is necessary to serve it, by mail or by hand delivery, unless the parties have otherwise agreed.

D.D.C. LCrR 49(e)(1).

When video exhibits are submitted for use in pretrial proceedings in Capitol Cases, the presiding judge and participants are able to view the video exhibits either before or during proceedings, but the media and public listening on the public access call-in lines are unable to see the video exhibits. This limitation prompted requests by members of the media for access to the video exhibits in several cases, and such requests were addressed on a case-by-case basis. Given the limitations of CM/ECF, public release of the video exhibits was effectuated in different ways and without a coordinated system for public access to the exhibits. For example, in one Capitol Case, the presiding judge directed the Clerk of Court to post video exhibits on the Court's website. *See* Order, *United States v. Chansley*, Case No. 21-cr-3 (RCL), ECF No. 30 (D.D.C. Mar. 15, 2021). In another Capitol Case, this Court simply ordered the government to provide video exhibits to a member of the news media, without specific directions on the manner of release. *See United States v. Jackson*, Case No. 21-mj-115 (BAH), 2021 WL 1026127, at *8 (D.D.C. Mar. 17, 2021); *see also* Min. Order (Apr. 28, 2021), *In Re Application for Access to Certain Sealed Video Exhibits*, Case No. 21-mc-34 (TFH) (denying news organizations' motion for access to video exhibits as moot after government released videos in *United States v. Tanios*, Case No. 21-cr-222-2 (TFH)). In other instances, at the request of the presiding judge, Court staff showed video exhibits to members of the media in person at the courthouse using copies of video exhibits provided on thumb drives by the USAO. While these various mechanisms succeeded in providing access to video exhibits in Capitol Cases, they were imperfect—for example, the Court website was unable to handle substantial traffic associated with public viewing of videos, delays were associated with arranging for viewing of the videos on media storage devices, and requiring members of the media to come into the Courthouse to view

4

exhibits resulted in only limited release of the videos. At the urging of this Court, the USAO began exploring technological options to provide media access to video exhibits submitted in Capitol cases. *See* Gov't's Resp. at 2, *In re Press and Pub. Access to Video Exhibits in the Capitol Riot Cases*, Case No. 21-mc-46 (BAH), ECF No. 3.

On May 3, 2021, petitioners submitted a letter petitioning the undersigned, as Chief Judge, for the issuance of a standing order to provide "a uniform method of prompt access to all judicial records," including video evidence, in cases arising from the Capitol Cases. Mot. to Access Video Exhibits in the Capitol Riot Cases at 6, *In Re Press and Pub. Access to Video Exhibits in the Capitol Riot Cases*, Case No. 21-mc-46 (BAH), ECF No. 1. Petitioners proposed a method of providing contemporaneous access to video exhibits whereby ProPublica, an independent nonprofit new organization would "serve as the press representative and take on the responsibility of receiving video exhibits from the Government, coordinating distribution of the videos to other press organizations, and making the videos accessible to the general public." *Id*. at 8. The Court then solicited input from relevant stakeholders, including the USAO and the Federal Public Defender's Office ("FPD"), which is representing a number of defendants charged in Capitol Cases. *In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, Case No. 21-mc-46 (BAH), 2021 WL 1946378, at *7 (D.D.C. May 14, 2021). The government proposed an alternative access method of access, whereby it "would create a 'drop box' for sharing exhibits with members of the news media." *Id.* at 3. FPD cautioned that defendants might be prejudiced if all non-sealed video exhibits were presumptively released to the media for potentially broad coverage, and stressed that case-by-case considerations should inform the scope and nature of public access, but indicated that petitioners' "streamlined approach" seemed reasonable. *Id.*

### B. Standing Order No. 21-28

Two weeks after the Press Coalition filed their petition, and upon consideration of responses by the USAO and FPD, this Court issued Standing Order No. 21-28 on May 14, 2021, along with a memorandum opinion and order granting the petition in part and denying it in part. *Id*. at 7. The Standing Order directed the government to implement the USAO-proposed "drop box" solution for viewing video exhibits in the Capitol Cases. Standing Order at 5–6. It further indicated that members of the media could seek access to video exhibits submitted in Capitol Cases by filing applications for access, pursuant to Local Criminal Rule 57.6, and that, upon grant of such an application, the video exhibits would be made available to any member of the media with access to the drop box. *Id.*[1] The order further provided that "[n]o recording, copying, downloading, retransmitting or further broadcasting of video exhibits in a particular case is permitted, *unless such permission is granted by the presiding judge*, who may seek the position of the parties," *id.* at 6 (emphasis added), thereby leaving the fashioning of any conditions for release to the prerogative of the presiding judge, who is best positioned to elicit from the parties pertinent factual and other considerations relevant to the current pretrial posture of these cases. It directed the government to "post[] such video exhibits promptly from the time

---

[1] Local Criminal Rule 57.6, titled "APPLICATIONS FOR RELIEF IN A CRIMINAL CASE BY PERSONS NOT PARTIES," provides, in pertinent part:

> Any news organization or other interested person . . . who seeks relief relating to any aspect of proceedings in a criminal case . . . shall file an application for such relief with the Court. The application shall include a statement of the applicant's interest in the matter as to which relief is sought, a statement of facts, and a specific prayer for relief. An application that pertains to a criminal case or matter to which a judge has been assigned shall be served on the parties and shall be referred by the Clerk to the assigned judge for determination. An application that pertains to a criminal investigative or grand jury matter to which no judge has been assigned shall be referred by the Clerk to the Chief Judge for determination.

D.D.C. LCrR 57.6.

of the proceedings for which the exhibit is submitted, *in compliance with any order issued by the presiding judge in the case.*" *Id.* (emphasis added).[2]

Since entry of the Standing Order, the Press Coalition has applied for access in numerous cases and judges in this District have responded by ordering, after consultation with the parties, unrestricted access to the requested video exhibits using the "drop box" technical solution directed in Standing Order 21-28. *See, e.g.*, Min. Order (Jun. 24, 2021), *In re Press Coalition's Motion for Access to Video Exhibits and to Set Aside Standing Order No. 21-28*, Case No. 21-mc-85 (CRC); Min. Order (Jun. 23, 2021), *United States v. Owens*, Case No. 21-cr-286 (BAH); Order, *In re Application for Access to Certain Video Exhibits*, Case No. 21-mc-77 (RCL), ECF No. 3 (D.D.C. Jun. 17, 2021); Min. Order (Jun. 17, 2021), *In re Application for Access to Video Exhibits*, Case No. 21-mc-83 (APM); Min. Order (Jun. 16, 2021), *In re Application for Access to Video Exhibits*, Case No. 21-mc-79 (TNM). Even before a media request for access, the Court has proactively consulted with the parties and ordered public release of video exhibits in Capitol Cases. *See, e.g.,* Min. Order (Jun. 25, 2021), *United States v. McHugh*, Case No. 21-mj-436 (BAH); Min. Order (Jun. 23, 2021), *United States v. Mock*, Case No. 21-mj-469 (BAH).

### C. The Pending Petition

Petitioners now seek an order releasing the video exhibits submitted to the Court in *United States v. Owens*, Case No. 21-cr-286 (BAH). Pet'rs' Mot. at 1. They further urge the Court to set aside the Standing Order No. 21-28—which was, of course, entered in response to

---

[2] Nothing in Standing Order No. 21-28 stops the Press Coalition from proceeding with its proposal for ProPublica—or any other media organization—assuming the responsibility of receiving video exhibits from the government, coordinating distribution of the videos to other press organizations, and making the videos accessible to the general public, unless such distribution is barred by the presiding judge of the case in which the video exhibits were submitted.

7

their first petition—arguing that the Standing Order restricts access to the video exhibits in violation of the First Amendment and the common law right of access. *Id.*

As noted, petitioners have already received part of the relief they requested in this latest petition. After the petition was docketed, the parties in *Owens* were directed to provide their positions on the petition. Min. Order (Jun. 16, 2021), *United States v. Owens*, Case No. 21-cr-286 (BAH). Neither party objected to the release of the video exhibits, and the Court directed the government to make the video exhibits "publicly available without restrictions, including by providing access using the 'drop box' technical solution described in Standing Order 21-28, *In re: Media Access to Video Exhibits in Pretrial Capitol Cases*." *Id.*, Min. Order (Jun. 23, 2021). The right of public access attached to the exhibits, *In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, 2021 WL 1946378, at *4, and no party presented any countervailing interest to counsel against release, so release without restriction was appropriate. The exhibits were published on the websites of the press organizations later that day. *See, e.g.*, Tom Dreisbach, *New Body Camera Footage Shows the Violence Against Police During the Capitol Riot*, Nat'l Pub. Radio (Jun. 23, 2021), https://www.npr.org/2021/06/23/1009650274/new-body-camera-footage-shows-the-violence-against-police-during-the-capitol-rio.

This leaves only petitioners' request to set aside the Standing Order.

## II. LEGAL STANDARD

"The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment." *In re Application of WP Co. LLC*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016) (citing *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 (D.D.C. 2013)). The pending petition implicates both.

### A. The Common Law Right of Access

The D.C. Circuit has explained that "there is a 'strong presumption in favor of public access to judicial proceedings,' including judicial records." *In re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980). This common law "right to inspect and copy judicial records is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), and "may be outweighed by competing interests," *In re Leopold,* 964 F.3d at 1127. The Supreme Court has instructed, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

The Supreme Court's highlighting of the fact specific nature of this inquiry in the context of "the particular case," *id.*, is echoed in the governing caselaw in this Circuit, *see Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 121 (D.C. Cir. 2021) (emphasizing the importance of applying "the *Hubbard* factors 'in light of the relevant facts and circumstances of [each] particular case.'" (quoting *Nixon*, 435 U.S. at 599)); *In re Leopold*, 964 F.3d at 1131. The competing interests that may overcome the presumption favoring public access to judicial records have been "crafted [] into a six-factor test" originating in *Hubbard*. *In re Leopold*, 964 F.3d at 1127. The *Hubbard* six-factor test "has consistently served as our lodestar" by "ensur[ing] that we fully account for the various public and private interests at stake," *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017), in evaluating motions to seal or to unseal and provide public access to judicial records.

The *Hubbard* test considers:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

9

*In re Leopold*, 964 F.3d at 1131 (quoting *Metlife*, 865 F.3d at 665); *see also id.* at 1129–30 (explaining that unless "Congress has spoken directly to the issue at hand," the "common-law standard enshrined in the *Hubbard* balancing test" governs "[]sealing decisions" (internal quotation marks omitted) (quoting *Metlife*, 865 F.3d at 669)); *Hubbard*, 650 F.2d at 317–22.

The D.C. Circuit has further explained that in addition to informing whether public access to records is required, relevant considerations may inform "how and when" access to judicial records is provided. *In re Leopold*, 964 F.3d at 1133; *see also Nixon*, 435 U.S. at 602 (indicating that the balancing of interests would be appropriate to determine whether audio tapes should be made available for release and copying, even where the tapes had been played at trial and transcripts thereof were available).

### B. First Amendment Right of Access

The First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents. *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 603–04 (1982). Bolstered by the Sixth Amendment's express right for a "public trial" in "all criminal prosecutions," U.S. Const. amend. VI, public access to criminal trials forms the core of this First Amendment constitutional right, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (explaining that "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted"). A similar right of access has been found to arise wherever "(i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding." *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers*, 448 U.S. at 573). Under this so-called "'experience and logic' test," *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d

918, 934 (D.C. Cir. 2003), "both these questions must be answered affirmatively before a constitutional requirement of access" attaches, *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985). Applying this standard, the Supreme Court has recognized a First Amendment right of access to criminal trials, *voir dire* proceedings, and preliminary hearings. *See Brice*, 649 F.3d at 795–96 (citing authorities).

Even where the First Amendment provides a right of public access, however, this right is "'qualified' and is not absolute." *In re Application of New York Times Co. for Access to Certain Sealed Court Records.* ("*In re New York Times*"), 585 F. Supp. 2d 83, 90 (D.D.C. 2008); *see also Brice*, 649 F.3d at 795. In particular, the presumption of public access may be overridden upon a showing that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Brice*, 649 F.3d at 796 (quoting *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991)). Evaluation of these factors is necessarily fact specific. *See Washington Post*, 935 F.2d at 291–92 (observing that protecting an ongoing criminal investing or the safety of a defendant may justify sealing a plea agreement and weighing the strength of those asserted interests based on the facts of the case).

### III. DISCUSSION

Petitioners seek to "set aside" Standing Order No. 21-28, which petitioners argue does not provide the public with access consistent with the First Amendment and common law rights of access. Pet'rs' Mem. at 11–12. In petitioners' view, the procedures outlined in the Standing Order are deficient in three ways: (1) by providing the government three days after the relevant hearing to upload videos to the drop box; (2) by allowing the government to make the videos

11

available only to members of the press; and (3) by "presumptively prohibit[ting] the press from recording, copying, downloading, transmitting, or otherwise publishing the videos to the public." *Id.* (citing Standing Order at 5–6).

Petitioners misapprehend the Standing Order. At the outset, the Standing Order does not require any set of procedures to be followed by any presiding judge in releasing video exhibits submitted in a case before that judge.[3] Nor does the standing order "ban . . . redistributing Video Exhibits." *Id.* at 15; *see supra* n.2. The Standing Order certainly contemplates that, in a "particular case," some video exhibits may be sufficiently sensitive and prejudicial that widespread dissemination would risk prejudice to a party and warrant the presiding judge to fashion restrictions on access, for example, by allowing access only for viewing in-person or by barring copying. This is not, however, as petitioners posit, a "presumption." *See id*. at 15. Rather, the Standing Order directs the government to implement a drop box system for video exhibit distribution and describes a set of procedures that may be followed if restricted dissemination is appropriate, *see* Standing Order at 5-6, but otherwise the Standing Order leaves the scope of release entirely to the discretion of the presiding judge best positioned to assess "the relevant facts and circumstances of the particular case," *Nixon*, 435 U.S. at 599.

Petitioners themselves acknowledge this point by citing numerous Capitol Cases in which their applications have been granted for access to video exhibits, without restrictions on publication or broadcasting. Pet'rs' Notice of Suppl. Authorities at 2, ECF No. 4 (collecting

---

[3]   Thus, petitioners' comparison of the Standing Order to the express exclusion of a member of the general public from a Vermont state courthouse, Pet'rs' Mem. at 13–14 (citing *Huminski v. Corsones*, 396 F.3d 53, 83-84 (2d Cir. 2004)), is wholly inapposite. The Standing Order does not require any set of procedures to be followed by any presiding judge in releasing video exhibits submitted in a case before that judge and is therefore dissimilar from a notice-of-trespass obtained by a court official expressly barring an individual from entering the courthouse. *See Huminski*, 396 F.3d at 64.

cases). Indeed, as already noted, in other cases, *before* petitioners sought access, the presiding judge has proactively elicited the parties' positions on public access to video exhibits and then ordered public release of the exhibits without restrictions. *See, e.g.,* Min. Orders (Jun. 23 and Jun. 25, 2021), *United States v. McHugh*, Case No. 21-mj-436 (BAH); Min. Orders (Jun. 20 and Jun. 23), *United States v. Mock*, Case No. 21-mj-469 (BAH). In sum, the video exhibits in Capitol Cases that petitioners request are frequently being made available without restriction, either prompted by petitioners or *sua sponte* by the Court, after consultation with the parties in a "particular case." Petitioners do not identify a single case in which access was requested and denied, or where access was granted with distribution restrictions.[4]

The public interest in disclosure of video exhibits in the Capitol Cases is undoubtedly great. These videos are not just important evidence in individual criminal proceedings but are vital evidence of what happened on January 6 when rioters stormed the U.S. Capitol grounds and building. *See, e.g.*, *Inside the Capitol Riot: An Exclusive Video Investigation*, N.Y. Times (Jun. 30, 2021), https://www.nytimes.com/2021/06/30/us/jan-6-capitol-attack-takeaways.html. Video exhibits released by the Court therefore help inform the public and facilitate media coverage about the attack on the Capitol, the government's handling of the investigation and prosecution of the Capitol Cases and this Court's processing of these cases.

---

[4] Petitioners' argument that the Standing Order requires a delay before release, *see* Pet'rs' Mem. at 12, similarly fails. The cited reference to the 72-hour delay in releasing video exhibits is from a summary of the government's position and is not part of the directives in the Standing Order. *Compare* Standing Order ¶ G *with id.* at 5-6. Indeed, this Court has, since the Standing Order was entered, ordered the government to release video exhibits "promptly." *See* Min. Order (Jun. 23, 2021), *United States v. Mock*, Case No. 21-mj-469 (BAH); *see also* Tom Dreisbach, *New Body Camera Footage Shows the Violence Against Police During the Capitol Riot*, Nat'l Pub. Radio (Jun. 23, 2021), https://www.npr.org/2021/06/23/1009650274/new-body-camera-footage-shows-the-violence-against-police-during-the-capitol-rio (reproducing and reporting on the *Mock* videos one day after the detention hearing).

At the same time, however, just as journalists vigorously shield from disclosure information to protect their sources—in part to protect broader interests in transparency and serve the public interest—courts too must keep certain information under seal or limit the nature of public access in order to protect the integrity of judicial proceedings. Regardless of whether the issue sounds in the First Amendment or in the common law, the right of access is not absolute, and may be overcome by a competing interests, *Globe Newspaper Co.*, 457 U.S. at 606 (First Amendment); *Cable News Network, Inc.*, 984 F.3d at 118 (common law), including a defendant's right to a fair trial, *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 14–15 (1986) (First Amendment); *see also Hubbard,* 650 F.2d at 320–21 (common law) ("[T]he possibility of prejudice to the defendant[] by sensational disclosure is a factor which may weigh in favor of denying immediate public access."). The decision of whether to provide access to a video exhibit, and what form that access will take must ultimately lie with the presiding judge, who bears the ultimate responsibility in ensuring that the due process rights of criminal defendants are properly considered and must weigh any competing interests relevant to the right of public access. In some cases, limiting the nature of access can serve the broader public interest by ensuring public access and *description* of the underlying events without permitting the kinds of distribution that threaten the integrity of the proceedings. *See* FED. R. CRIM. P. 53 (forbidding the taking of photographs or broadcasting of judicial proceedings from the courtroom). The Standing Order provides a system for releasing video exhibits and describes a mechanism for release while leaving the ultimate decision up to the presiding judge.

Petitioners, in a supplemental filing, cite a recent case in which Fourth Circuit held that "a reviewing Court must apply strict scrutiny to a Maryland statute under which 'members of the public may legally obtain copies of the official court recordings of criminal proceedings, [but]

14

are barred . . . from then broadcasting those recordings.'" Pet'rs' Notice of Suppl. Authorities at 1 (alterations in original) (quoting *Soderberg v. Carrion*, --- F.3d ---, 2021 WL 2426213, at *2 (4th Cir. June 15, 2021)). This case is inapposite. Unlike the Maryland statute, which provides a categorical rule prohibiting redistribution and broadcasting of official court records, *see Soderberg*, --- F.3d ---, 2021 WL 2426213, at *1, the Standing Order provides no rule beyond ordering the USAO to implement a system for releasing video exhibits. It imposes no restraint whatsoever on petitioners. The Standing Order simply requires compliance with the scope of any access permitted by the presiding judge, who may in a "particular case" bar broadcasting of video exhibits. Standing Order at 6. Notably, this discretionary power of the presiding judge would remain to be exercised if petitioners' instant request to set aside the Standing Order were granted. Whether petitioners correctly opine about the unconstitutionality of limiting dissemination of video exhibits categorically or in a specific case, this presents legal issues that need not be resolved here. This is simply not what the Standing Order does nor how it operates.

Should any restrictions on access referenced in the Standing Order be applied by a presiding judge, petitioners may be able to challenge the constitutionality of those restrictions "in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. To reiterate, the Standing Order itself does not impose any restrictions on the scope of access to video exhibits in Capitol Cases. Instead, the Standing Order merely provides mechanisms for public and media access to video exhibits for this Court, leaving the fact-specific inquiries necessary to allow access to video exhibits in a particular case to the discretion of the presiding judge best positioned to make the assessment of any countervailing factors. As the Court noted in addressing the Press Coalition's original petition, "presumptive release, copying and dissemination of video exhibits submitted in Capitol Cases, without regard to any countervailing

15

factors presented by individual defendants, is not warranted given the individualized nature of the prejudice analysis." *In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, 2021 WL 1946378, at *6.

The approach reflected in the Standing Order is particularly appropriate given the procedural posture: the earlier petition was submitted to the undersigned Chief Judge pursuant to the Local Rules' authorization for the Chief Judge to "take such other administrative actions . . . as in . . . her judgment are necessary to assure the just, speedy and inexpensive determination of cases and are not inconsistent with these Rules." D.D.C. LCvR 40.7(h); D.D.C. LCrR 57.14(h); *see also In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, 2021 WL 1946378, at *1 n.1 (identifying these rules as the source of the authority to consider the petition). This rule vests *administrative* power in the Chief Judge, rather than the power petitioners seemingly seek to be exercised of making *substantive* and fact-specific decisions about the handling of evidence in cases pending before other judges on this Court. Just as all federal judges must be guided by the constitutional and statutory limitations on their exercise of judicial power, the Chief Judge must be scrupulously respectful of the limits of that role and the obligation to act only in accordance with this Court's Local Rules.

The media and public access mechanisms outlined in Standing Order No. 21-28 appear to be working.[5] Petitioners have obtained unrestricted access to the video exhibits in many cases and are sharing them with the public, clearly unimpeded by possible restrictions referenced in the Standing Order. Based on the access requests made and granted so far, release of video exhibits without restriction will frequently be appropriate, particularly where the parties raise no

---

[5] The Standing Order also provided other means of access to proceedings, including on-site video access from a dedicated media room within the courthouse, in-person access to proceedings as consistent with social distancing protocols, and reiterated the policy of remote audio access to proceedings using designated call-in lines. Standing Order at 4–5.

16

articulable objection to such release of video exhibits. The ultimate decision, however, must lie with the presiding judge, and the Standing Order does nothing to limit the discretion of the judges of this Court to resolve fact-specific issues regarding release of video exhibits in the cases pending before them.

## IV. CONCLUSION AND ORDER

For these reasons, petitioners have failed to establish that Standing Order No. 21-28 restricts access to the video exhibits such that vacatur of this Standing Order is warranted. Accordingly, it is hereby

**ORDERED** that petitioners' Motion to Access Video Exhibits in *United States v. Owens*, Case No. 21-cr-286 (BAH), is **DENIED AS MOOT**; and it is further

**ORDERED** that petitioners' Motion to Set Aside Standing Order No. 21-28 is **DENIED**.

**SO ORDERED**

Date: July 2, 2021

_____
BERYL A. HOWELL
Chief Judge